UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICE LYNNETTE HAROLD,

        Appellant,                             Case No. 20-10514

vs.                                                     HON. MARK A. GOLDSMITH

UNITED STATES OF AMERICA,

        Appellee.
_____/

**OPINION & ORDER**
**AFFIRMING THE BANKRUPTCY COURT'S DECISION**

On January 20, 2016, Debtor/Appellant Patrice Harold filed a voluntary bankruptcy petition pursuant to 11 U.S.C. Ch. 7. The Internal Revenue Service ("the IRS" or "the Government") subsequently filed an adversary proceeding complaint to determine the dischargeability of Harold's tax debts for various tax years. In an opinion entered on August 20, 2018, the United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court") granted the Government's motion for partial summary judgment, concluding that Harold's 2008 and 2010 tax liabilities were nondischargeable in bankruptcy pursuant to 11 U.S.C § 523(a)(1)(B). United States v. Harold (In re Harold), 588 B.R. 484, 496 (Bankr. E.D. Mich. 2020). Harold now appeals from the bankruptcy court's opinion, but only with respect to the dischargeability of her 2008 tax liability. Notice of Appeal (Dkt. 1). For the reasons that follow, the decision of the Bankruptcy Court is affirmed.[1]

**I. BACKGROUND**

---

[1] Because oral argument will not aid the Court's decisional process, the appeal will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2).

The facts set forth herein are not in dispute. Originally, Harold's tax return for the 2008 tax year was due on April 15, 2009. However, pursuant to the IRS's records, on April 13, 2009, Harold and her husband, Thomas Barrow, obtained a six-month extension of the filing deadline. Form 4340, Designated Bankr. Rec. at PageID.212 (Dkt. 3).[2] As a result, their 2008 tax return was due on October 15, 2009. Id.

In 2009, Harold hired Akono Gross of Lothamer Tax Resolution, Inc. ("Lothamer") to negotiate an installment agreement with the IRS regarding outstanding federal income tax liabilities dating back to 2003. Gross Dep., Designated Bankr. Rec. at PageID.140. On June 2, 2009, Gross sent a fax to IRS Revenue Officer Antoinette Cooley, with whom he negotiated an installment agreement. Id. at PageID.152. The fax enclosed the first two pages of Harold and Barrow's 2008 tax return and stated that the 2008 return "was sent to the IRS for filing on June 1, 2009." Id. On June 16, 2009, Gross also faxed Cooley a signed copy of the full 2008 Form 1040, 6/16/09 Fax, Designated Bankr. Rec. at PageID.184-194, which Gross described in deposition testimony as a "courtesy copy," Gross Dep., Designated Bankr. Rec. at PageID.154. In his deposition, Gross testified that he does not remember if he actually filed the 2008 tax return, but said that if he did so, it would have been his practice to file the return by regular mail, sent to the IRS service center (not to a revenue officer) on or before June 1, 2009. Id. at PageID.152.

---

[2] "Designated Bankr. Rec." refers to the items from the Bankruptcy Court record that the parties designated to include in the record on appeal, which are collectively contained in a single pdf file (Dkt. 3). Harold did not file an appendix with her appeal brief as required by Federal Rule of Bankruptcy Procedure 8018(b)(1). However, the Court "may dispense with the appendix and permit an appeal to proceed on the original record." FRBP 8018(e). The Government submits that, "[b]ecause the entire record on appeal was filed in this case at Docket No. 3 as a single pdf . . . the purpose of the appendix was achieved through the docketing of the appeal record in this case as a single pdf file, which portions can be cited using PageID numbers from that file." The Court agrees. Accordingly, this opinion uses PageID numbers to cite portions of the designated Bankruptcy Court record.

On July 6, 2009, Gross sent a third fax to Cooley, enclosing a Form 433-D, Installment Agreement, covering tax periods for 2003 through 2008. 7/6/09 Fax, Designated Bankr. Rec. at PageID.196-201. On or about July 10, 2009, Harold and Barrow entered into an installment agreement with the IRS. 7/10/09 Approval Letter, Designated Bankr. Rec. at PageID.203-204. However, the letter Cooley sent to Harold and Barrow accepting the agreement did not cover tax year 2008 and contains no mention of the 2008 tax return. See id. Rather, the letter simply stated that "the amount [Harold and Barrow] owe as of 07/09/09 is $132,526.04." Id. at PageID.203.[3] In a declaration, Cooley states that it was not her practice "to require that, post-installment agreement returns be filed directly with [her]." Decl. of A. Cooley, Designated Bankr. Rec. at PageID.218. Instead, she "regularly directed taxpayers to file future returns as they normally would, which in most instances was through the IRS service center." Id.

Years later, an IRS revenue officer named Christopher Smith was assigned to Harold's and Barrow's file to secure any delinquent tax returns. Decl. of C. Smith, Designated Bankr. Rec. at PageID.208. In January 2016, after becoming aware that the IRS had no record of Harold's and Barrow's 2008 tax return being filed, Smith contacted Lothamer (which still had a power of attorney on file with the IRS) and requested a copy of the 2008 tax return. Id. On January 8, 2016, Bridgette Austin, a senior case manager at Lothamer, sent an email to Smith attaching the 2008 tax return and stating that it had been filed with Revenue Officer Cooley on June 16, 2009. 01/08/16 Email, Designated Bankr. Rec. at PageID.206. Smith then caused the Form 1040 to be filed on or about January 15, 2016. Decl. of C. Smith, Designated Bankr. Rec. at PageID.208. That same day, the IRS assessed taxes based on the filed return. Form 4340, Designated Bankr.

---

[3] The Form 433-D, Installment Agreement, sent by Gross provides that the total amount of taxes owed as of July 2009 was $202,814.40. 7/6/09 Fax, Designated Bankr. Rec. at PageID.197. The discrepancy between the $132,526.04 and $202,814.40 figures is due to the fact that the $132,526.04 figure does not account for the 2008 tax liability or civil penalties. Gross Dep., Designated Bankr. Rec. at PageID.147.

Rec. at PageID.221. Five days later, on January 20, 2016, Harold filed her voluntary Chapter 7 bankruptcy petition. Bankr. Petition, Designated Bankr. Rec. at PageID.1854.

On November 15, 2016, the Government filed its adversary proceeding three-count complaint to determine the dischargeability of Harold's tax debts pursuant to Bankruptcy Rule 7001(2). See Compl., Designated Bankr. Rec. at PageID.15. As relevant here, count II of the complaint contains the following cause of action: nondischargeability of tax debt for tax years 2008 and 2010 pursuant to 11 U.S.C. § 523(a)(1)(B). Id. at Page.ID18-19. Under this statute, a tax return liability is dischargeable in bankruptcy if it is timely "filed" or "given" to the IRS. 11 U.S.C. § 523(a)(1)(B).

On January 5, 2018, the Government filed a motion for summary judgment on counts I and II of its complaint. Mot. for Summary Judgment ("MSJ"), Designated Bankr. Rec. at PageID.115. With respect to count II, the Government argued that, under binding Sixth Circuit precedent set forth in Miller v. United States, 784 F.2d 728 (6th Cir. 1986), the "physical delivery rule" governs tax return filing, subject to two limited statutory exceptions contained in 26 U.S.C. § 7502, and that, in this case, the "physical delivery rule" was not met with respect to the Form 1040 for tax year 2008 until January 2016, when the IRS received the Form 1040. Id. at PageID.128-129. The Government also argued that neither of the statutory exceptions in § 7502 applies here because Harold failed to provide any evidence of a postmark or certified mail card for the filing of the 2008 return. Id. at PageID.128.

In her summary judgment opposition, Harold made the following arguments: (i) Gross's mailing of the tax return constitutes physical delivery, (ii) Gross's faxing of the 2008 Form 1040 in 2009 to Cooley constitutes physical delivery of the 2008 return, and (iii) the IRS's entry into an installment agreement with taxpayers establishes that the 2008 tax return had been filed. Resp. to MSJ, Designated Bankr. Rec. at PageID.229-241.

4

On August 20, 2018, the Bankruptcy Court granted the Government's motion for partial summary judgment, concluding, in relevant part, that Harold's federal income tax liability for 2008 was nondischargeable pursuant to 11 U.S.C § 523(a)(1)(B), because the return was filed late (i.e. less than two years before the bankruptcy petition). In re Harold, 588 B.R. at 496. In reaching this conclusion, the Bankruptcy Court rejected Harold's argument that the June 16, 2009 fax from Gross to Cooley constituted delivery of the 2008 return for filing because that facsimile transmission was expressly intended to provide a courtesy copy of the return, and Gross testified at his deposition that his general practice was to (i) mail a return by standard U.S. Mail and not fax it, and (ii), mail it directly to the IRS service center and not to a revenue officer, if he did mail a return for filing. Id. at 495. The Bankruptcy Court also rejected Harold's argument that the IRS would not have approved the installment agreement unless the taxpayers' 2008 return was filed, explaining that the 2008 return was not delinquent at the time the IRS approved the installment agreement in July 2009 because Harold and Barrow had obtained a six-month extension of the deadline to file that return, to October 15, 2009. Id. at 495-496.[4]

On February 27, 2020, Harold timely appealed the Bankruptcy Court's summary judgment opinion, but only with respect to the 2008 tax liability. See Notice of Appeal. She argues the Bankruptcy Court erred in four ways. First, the Bankruptcy Court erred by not finding the return timely, as it was "given" to the IRS within the meaning of 11 U.S.C. §523(a)(1)(B). Appellant Br. at 13 (Dkt. 7). Second, the Bankruptcy Court erred by concluding that, at the time the installment agreement was issued by the IRS (July 10, 2009), there were no current taxes due on the 2008 tax year and the 2008 return was not delinquent. Id. at 14-15. Third, the Bankruptcy Court erred by

---

[4] The Bankruptcy Court's summary judgment opinion became a final decision for appeal purposes when the Bankruptcy Court, after a trial, on February 19, 2020, entered an opinion and order determining that Harold's federal income tax liabilities for years 2004-2012 and 2014 are nondischargeable pursuant to 11 U.S.C § 523(a)(1)(C) for having willfully attempted to defeat tax. United States of America v. Harold (In re Harold), 611 B.R. 835, 850 (Bankr. E.D. Mich. 2020).

5

holding that the sending of the fax of the 2008 tax return to Revenue Officer Cooley was not a filing of the 2008 tax return. Id. at 15-16. Finally, the Bankruptcy Court erred in ignoring other evidence that the 2008 tax return was filed by facsimile on June 16, 2009. Id. at 16-17.

The Government does not fully respond to all of Harold's argument; instead, it makes two points. First, Harold waived the argument that the Bankruptcy Court failed to consider whether the 2008 return was "given" to the IRS, because Harold failed to raise this argument in her summary judgment opposition brief or at the summary judgment hearing. Appellee Br. at 19-21 (Dkt. 8). Second, even if the argument was not waived, Harold's argument fails because a federal income tax return must be "filed" and cannot be "given" for purposes of Section 523(a)(1)(B) of the Bankruptcy Code. Id. at 21-27.

The Court agrees with the Government that Harold's argument that the return was "given" has been waived. It also concludes that the Bankruptcy Court properly granted summary judgment to the Government because there was no proper evidence creating a fact issue that the return was properly mailed or faxed to the IRS.

## II. STANDARD OF DECISION

The district court sits as an appellate court for the decisions of the Bankruptcy Court. 28 U.S.C. § 158. "[B]ecause a grant of summary judgment presents a pure question of law," the court reviews the Bankruptcy Court's grant of summary judgment de novo. Poss v. Morris (In re Morris), 260 F.3d 654, 663 (6th Cir. 2001). Federal Rule of Civil Procedure 56(a) is made applicable in bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056. Thus, in bankruptcy adversary proceedings, as in federal civil proceedings, "[s]ummary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Hagan v. Baird (In re B & P Baird Holdings,

6

Inc.), 759 F. App'x 468, 473 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(a) and citing Fed. R. Bankr. P. 7056). The Court "must view all facts and inferences in the light most favorable to the non-moving party." Id. at 474 (quoting Hall v. Spencer Cty., 583 F.3d 930, 933 (6th Cir. 2009)).

### III. ANALYSIS

A creditor seeking a determination that a debt is nondischargeable under one of the exceptions to discharge in § 523(a) of the Bankruptcy Code, has the burden to prove by a preponderance of evidence that all the elements of the applicable exception are present. Meyers v. Internal Revenue Service (In re Meyers), 196 F.3d 622, 624 (6th Cir. 1999) (citing Grogan v. Garner, 498 U.S. 279, 290-291 (1991)). In count II of its complaint, the Government seeks, in relevant part, a determination that Harold's 2008 taxes are excepted from her discharge under § 523(a)(1)(B). Eleven U.S.C. § 523 provides a list of debts that are non-dischargeable in Chapter 7 bankruptcy. Section 523(a)(1)(B) excepts from discharge a debt for a tax "with respect to which a return . . . (i) was not filed or given; or (ii) was filed or given after the date on which the return . . . was last due, under applicable law or under any extension, and after two years before the date of the filing of the petition[.]" Neither party contends that the 2008 tax return was never filed or given. Thus, only subsection ii—often referred to as the "two-year rule"—is applicable. As with any § 523(a) analysis, "[t]he creditor . . . bears the burden of proving by a preponderance of the evidence that a debt is excepted from discharge." In re Meyers, 196 F.3d at 624 (citing Grogan, 498 U.S. at 290-291).

**A. Harold Waived her Argument that the 2008 Tax Return Was Timely "Given"**

In the underlying adversary proceeding, Harold only argued that her 2008 taxes were timely "filed" far more than two years before she filed her bankruptcy petition. Now, on appeal, Harold argues for the first time that she "gave" her 2008 return to the IRS when Gross faxed Cooley a courtesy copy of her 2008 Form 1040 in June 2009. Because Harold raises this argument

7

for the first time on appeal, a threshold issue the Court must resolve is whether Harold has waived this argument.[5]

In general, arguments not presented to a bankruptcy court are waived on appeal. Stevenson v. J.C. Bradford and Co. (In re Cannon), 277 F.3d 838, 848 (6th Cir. 2002); Allen-Morris v. Nicholas Financial, Inc. (In re Allen-Morris), 523 B.R. 532, 538-539 (E.D. Mich. 2014) (citing Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 552 (6th Cir. 2008)). "Whether to consider an issue on which the trial court did not pass rests within the discretion of the appellate court and depends upon the facts of individual cases." In re Cannon, 277 F.3d at 848. Nevertheless, "'[d]eviations are [only] permitted in exceptional cases or particular circumstances, or when the rule would produce a plain miscarriage of justice. Such discretion is rarely exercised, and requires a compelling reason to disregard the traditional waiver rule.'" In re Allen-Morris, 523 B.R. at 539 (quoting Brown v. United States, 545 F. App'x 435, 438 (6th Cir. 2013)). Factors guiding the determination of whether to consider an issue for the first time on appeal include the following:

> 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a [bankruptcy] judge and [a district] court.

In re Cannon, 277 F.3d at 848 (citing Friendly Farms v. Reliance Ins. Co., 79 F.3d 541, 545 (6th Cir. 1996)).

The first Cannon factor supports considering on appeal Harold's new argument regarding whether she timely "gave" her 2008 tax return to the IRS, as this issue is a question of law regarding the proper application of § 523(a)(1)(B) on the established facts. However, the remaining Cannon factors support declining to consider this issue on appeal. The proper

---

[5] Harold failed to file a reply and thus provides no response to the Government's argument that she waived her argument that her 2008 tax return was timely "given."

interpretation of the term "given" and its application in this context appears to be an issue of first impression in the Sixth Circuit. Thus, the proper resolution of the issue is not clear and beyond doubt. Additionally, it does not appear that failure to consider this issue for the first time on appeal will result in a miscarriage of justice, as Harold puts forth no argument as to why she could not have raised this argument to the Bankruptcy Court. As the Sixth Circuit has explained, "failure to make all of the arguments available to a party during the relevant briefing period, but not realizing this until after he/she has received an unfavorable ruling, does not constitute manifest injustice." Brown, 545 F. App'x at 438. Further, the Court's failure to consider Harold's new argument on appeal will result, at most, in Harold remaining liable for a tax obligation that she does not dispute. Under such circumstances, the Court's failure to take up the issue for the first time on appeal will not result in a denial of substantial justice.

This is not the type of "rare" or "exceptional" case warranting deviation from the general rule that an issue raised for the first time on appeal is waived. Therefore, this argument is deemed waived.

### B. The 2008 Tax Return Was Not Timely "Filed"

The Bankruptcy Court held that Harold's federal income tax liability for year 2008 is nondischargeable under 11 U.S.C. § 523(a)(1)(B) because she did not file her 2008 federal income tax return until January 15, 2016, five days before she filed her bankruptcy petition. Pursuant to § 523(a)(1)(B)(ii), Harold's 2008 tax liability could only be dischargeable if the return for that tax year had been filed with the IRS more than two years before Harold filed her bankruptcy petition.

Although the Internal Revenue Code ("IRC") does not expressly define the term "filed," the Sixth Circuit's Miller decision supplies a controlling definition: a document is filed with the IRS when it "is delivered and received." 784 F.2d at 730 (citing United States v. Lombardo, 241 U.S. 73, 76 (1916)). This definition has become known as the "physical delivery rule." The

physical delivery rule has two statutory exceptions, both of which apply only to a return that is sent to the IRS by mail. First, pursuant to 26 U.S.C. § 7502(a)(1), if a return is sent by U.S. mail before the filing deadline but is not actually physically delivered until after that deadline, the postmark date is considered the date of delivery. Second, pursuant to § 7502(c)(1), if a return is sent by registered or certified U.S. mail, such registration shall be prima facie evidence that the document was physically delivered on the postmark date.

In opposition to the Government's motion for summary judgment in the underlying adversary proceeding, Harold argued that the 2008 tax return was timely filed either when Gross sent it by regular mail to the IRS, or when Gross faxed a copy of the return to Cooley on June 16, 2009. Harold alternatively argued that the proposed installment agreement that Gross faxed to Cooley on July 6, 2009 included Harold's 2008 taxes, and the IRS would not have approved this installment agreement unless Harold's 2008 return had been filed by the date of approval. The Bankruptcy Court rejected each of these arguments.

On appeal, Harold does not squarely challenge the Bankruptcy Court's rejection of her argument that Gross's alleged mailing of the 2008 tax return to the IRS constituted a "filing."[6] Rather, she challenges the Bankruptcy Court's rejection of her other two arguments—(i) that Gross's June 16, 2009 faxing of the copy of the 2008 tax return constituted a "filing," and (ii) that the IRS would not have accepted the proposed installment agreement that Gross faxed to Cooley

---

[6] The Bankruptcy Court based this holding on the fact that Harold's evidence that the 2008 return was filed by mail consisted solely of the testimony of Barrow and Gross. In re Harold, 588 B.R. at 491. Harold did not put forth any evidence of a postmark, or certified or registered mail receipts, of the kind required by the statutory exceptions to the physical delivery rule contained in § 7502(a) and (c). Id. As a result, the Bankruptcy Court held, "[u]nder Miller, [Harold] is barred from using any other extrinsic evidence to support delivery by mail. Therefore, there are no genuine issues of material fact in dispute regarding whether the 2008 return was filed by mail. It was not." Id. Harold does not challenge any of this analysis. This Court finds no error in the conclusion reached by the Bankruptcy Court.

10

on July 6, 2009 unless Harold's 2008 tax return had been filed by that point.[7] Specifically, Harold argues the Bankruptcy Court erred by: (i) finding that at the time the installment agreement was issued by the IRS (July 10, 2009), the 2008 return was not delinquent; (ii) holding that Gross's faxing of the 2008 tax return to Cooley on June 16, 2009 was not a filing of the 2008 tax return; and (iii) ignoring other evidence that the 2008 tax return was filed by facsimile on June 16, 2009. Each argument is addressed in turn.

### i. The July 10, 2009 Approval of the Installment Agreement

Harold argues that the Bankruptcy Court erred in finding that at the time the installment agreement was approved by the IRS (July 10, 2009), the 2008 return was not delinquent. She makes this argument in an attempt to show the following: the fact that the IRS accepted the installment agreement on July 10, 2009 necessarily implies that her 2008 tax return was filed— and not delinquent—as of that date.

Under standard IRS operating procedures, a revenue officer will not accept an installment agreement if a taxpayer has failed to timely file any return. See Internal Revenue Manual §§ 5.14.1.2, 5.14.1.3, 5.14.1.4.2. Neither party disputes this fact. Compare Appellee Br. at 10-11 ("IRS operating procedure bar[s] acceptance of an installment agreement if a taxpayer has failed to timely file any return, even if the year is not included in the proposed installment agreement.") with Appellant Br. at 11 ("The IRS could not, by policy, approve an installment agreement unless all delinquent taxes were accounted for."). Accordingly, the parties agree that the IRS would not

---

[7] Regarding Harold's second argument, Harold does not specify how exactly her 2008 tax return had been filed prior to July 6, 2009 (i.e., whether the IRS had recognized the return faxed on June 16, 2009 as a filed return or whether the IRS had received a paper return allegedly sent by mail). Rather, she argues the mere fact that the installment agreement was accepted in July 2009 "is compelling circumstantial evidence that the Appellant and her husband had filed their 2008 tax return." Appellant Br. at 14-15.

11

have accepted the installment agreement on July 10, 2009 if Harold's 2008 tax return was delinquent as of that date.

However, the parties differ on the issue of whether the 2008 tax return was delinquent as of July 10, 2009, the date the IRS approved the installment agreement at issue. The Government argues that "the 2008 return was not delinquent as of July 10, 2009, because it was not due until October 15, 2009, as Mr. Barrow and [Harold] had obtained a return filing deadline extension in April 2009." Appellee Br. at 11. Harold argues that her 2008 taxes were delinquent as of July 2009 because her 2008 taxes were due on April 15, 2009 "unless the Secretary extended the time for payment under 26 U.S.C. § 6161 (which there is no evidence of)." Appellant Br. at 14.

Harold's argument that there is "no evidence" of the sixth-month extension for filing her 2008 tax return ignores the IRS Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, which clearly reflects that on April 13, 2009, Harold's "time to file" was extended to October 15, 2009. Form 4340, Designated Bankr. Rec. at PageID.212. The extension of Harold's deadline to file her 2008 tax return was presumably triggered by her filing of IRS Form 4868, which results in an automatic six-month extension of time to file the taxpayer's return. 26 C.F.R. 1.6081-4(a). The record also contains Smith's declaration that his review of IRS computer account transcripts revealed the Harold's filing deadline for her 2008 taxes was extended to October 15, 2009. Decl. of C. Smith, Designated Bankr. Rec. at PageID.1657. Harold put forth no evidence to contradict the Form 4340 or Smith's declaration. As a result, the record confirms that Harold received a six-month extension of the 2008 tax return filing deadline and, therefore, her 2008 tax return was due on October 15, 2009. Consequently, as of July 10, 2009, Harold's deadline for filing her 2008 tax return had not expired. Therefore, the tax return was not delinquent as of that date. Because it was not delinquent as of July 10, 2009, the 2008 tax return posed no obstacle to Revenue Officer Cooley approving the installment agreement. Because the IRS's

approval of the installment agreement was not contingent on Harold's timely filing of the 2008 tax return, the IRS's approval of the installment agreement does not establish that Harold's 2008 tax return had been filed prior to July 10, 2009.

For these reasons, Bankruptcy Court correctly found that the 2008 tax return was not delinquent at the time the installment agreement was issued by the IRS.

### ii. The June 16, 2009 Faxing of the 2008 Tax Return Copy

On appeal, Harold argues the Bankruptcy Court should have found that Gross's fax to Cooley on June 16, 2009, which included a copy of the 2008 tax return, constituted a timely "filing" of the tax return.[8] Harold takes issue with the Bankruptcy Court's conclusion that the fax did not constitute a filing because the fax did not state that the copy of the tax return "was intended for filing" and, further, that Gross testified that the copy "was a courtesy copy that was not intended for filing." In re Harold, 588 B.R. at 495. Her point is that "there is no requirement that any communication directly or implicitly state that a copy is 'intended for filing' as indicated by the Bankruptcy Court." Appellant Br. at 15. Harold does not contest the Bankruptcy Court's rejection of the Government's argument that the June 16, 2009 fax did not constitute delivery of her 2008 tax return to the proper place.

The Court finds that the June 16, 2009 faxing of the 2008 tax return does not constitute a "filing" for two reasons. First, although it is true that "there is no requirement" per se that a communication state that a tax return "is intended for filing," this case does not involve the mere absence of words of demonstrating an intent to file. Rather, it involves express words negating an intent to file. Whatever "intent" may mean in connection with filing, it would be unreasonable to hold that a transmitting a "courtesy copy" to a revenue officer constitutes filing a tax return. The

---

[8] Fax is a permissible method of delivery. See 26 U.S.C. § 7502(f) (referring to other "equivalents of registered and certified mail" that allow for electronic filing).

term "filing" denotes an intent to do something to create a permanent record. Conversely, a "courtesy copy" denotes a casual transmittal, as in a sending a copy that the recipient may keep or not, as he or she wishes. Consequently, it is difficult to imagine how a tax return sent as a "courtesy copy" can be considered as a filing. The Bankruptcy Court correctly concluded that the June 16, 2009 fax was a transmittal of a courtesy copy of the 2008 tax return, not a filing of the 2008 tax return.

Second, the 2008 tax return was not filed via the June 16, 2009 fax because the fax did not constitute delivery of the tax return to the proper place for filing. The IRC specifies the place where tax returns are required to be filed. For persons other than corporations, "a return . . . shall be made to the Secretary—(i) in the internal revenue district in which is located the legal residence . . . of the person making the return, or (ii) at the service center serving the internal revenue district referred to in clause (i), as the Secretary may by regulations designate." IRC § 6091(b)(1). Looking to the applicable regulations, Treasury Regulation § 1.6091-2(a)(1) provides that "income tax returns of individuals . . . shall be filed with any person assigned the responsibility to receive returns at the local Internal Revenue Service office that serves the legal residence . . . of the person required to make the return." Further, in Friedmann v. Commissioner, the Tax Court held that an individual failed to file his tax return by giving photocopies of the tax return to a revenue agent, holding: "Clearly, the revenue agent was not the prescribed place for filing those returns pursuant to section 6901(b)(1)." 82 T.C.M. 381, 2001 WL 883222, at *7 (Aug. 7, 2001) (citing O'Bryan Bros., Inc. v. Commissioner, 127 F.2d 645, 647 (6th Cir. 1942); W.H. Hill Co. v. Commissioner, 64 F.2d 506, 507 (6th Cir. 1933)) (other citations omitted).[9] Neither party disputes that the June

---

[9] "Decisions of the Tax Court do not bind district courts. They are, however, entitled to considerable weight." Rhoades, McKee & Boer v. United States, 822 F. Supp. 445, 449 (W.D. Mich. 1993) (citation omitted), aff'd in part and rev'd in part on other grounds, 43 F.3d 1071 (6th Cir. 1995).

16, 2009 fax delivered the 2008 tax return to a revenue officer rather than a place prescribed for filing by the IRC and the regulations for filing of tax returns.

As noted above, the Bankruptcy Court rejected the Government's argument that the June 16, 2009 fax did not deliver her 2008 tax return to the proper place. In re Harold, 588 B.R. at 493. In doing so, the court acknowledged Friedmann, but held that "the IRS has conceded in other contexts that it may be permissible to file a return with a revenue officer rather than the IRS service center." Id. Specifically, "[o]n August 20, 1999, the IRS Chief Counsel Advice directly stated in its Memorandum For District Counsel, IRS CCA 199933039, 1999 WL 634177, that '[r]evenue officers may request taxpayers to file delinquent returns directly with the revenue officer' and that they 'have the authority to request and receive hand-carried, delinquent returns.'" Id.

The Bankruptcy Court's heavy reliance on the August 1999 memorandum is misplaced. Such memoranda have no have precedential value in law. Disabled American Veterans v. Commissioner, 942 F.2d 309, 315 n.5 (6th Cir. 1991). Moreover, even if treated as controlling authority, the August 1999 memorandum at most creates a limited exception to § 6091(b)(1)'s specified place for filing, applicable only in circumstances where a tax return is given to a revenue officer in response to the revenue officer's request for a delinquent tax return. Such circumstances are not present here. Nothing in the record indicates that Gross sent the June 16, 2009 fax in response to Revenue Officer Cooley's request for Harold to file the return. And, for the reasons discussed above, the 2008 tax return was not delinquent as of June 2009. Thus, the August 1999 provides no basis upon which to hold that the June 16, 2009 fax delivered Harold's 2008 tax return to the proper place for filing.

In summary, the Bankruptcy Court held that the June 16, 2009 faxing of the 2008 tax return did not constitute a "filing" of the tax return because it was a transmittal of a mere "courtesy copy." In re Harold, 588 B.R. at 495. This Court agrees, but finds that the June 16, 2009 faxing of the tax

15

return does not constitute a filing for an additional reason: the fax failed to deliver the 2008 tax return to an office specified by § 6091(b)(1) and regulations for filing of tax returns. Because the Bankruptcy Court reached the correct conclusion that the June 16, 2009 fax did not "file" the 2008 tax return, this Court affirms the Bankruptcy Court's conclusion.

### iii. Other Evidence

Harold argues that the Bankruptcy Court should have considered "other evidence" that the 2008 tax return was filed by facsimile on June 16, 2009. This "other evidence" consists of: (i) Harold's husband's deposition testimony that "as far as we knew, he [Akono Gross] filed it with the revenue officer" and "if you look at the [installment agreement], . . . you see the return's listed, [] that means Mrs. Cooley saw it and had it; that means its filed with the IRS"; (ii) Cooley's deposition testimony that "someone else could have processed the return"; and (iii) the January 8, 2016 letter sent by Austin to Revenue Officer Smith stating, "the 2008 tax return was filed with RO Antoinette Cooley on June 16, 2009." Appellant Br. at 16-17.

Harold's argument concerning the "other evidence" fails for at least two reasons. First, the argument ignores that much of this evidence cannot be considered on a motion for summary judgment. For instance, Austin's statement that "the 2008 tax return was filed with RO Antoinette Cooley on June 16, 2009" is hearsay and thus cannot be considered on a motion for summary judgment. Wiley v. United States, 20 F.3d 222, 225-226 (6th Cir. 1994).

Second, and in any event, even if the "other evidence" were considered, it does not demonstrate that the 2008 tax return was delivered to the proper place for filing. Rather, at most, this evidence supports that the June 16, 2009 fax delivered the 2008 tax return to Revenue Officer Cooley. As a result, the "other evidence" highlighted by Harold does not warrant reversal of the Bankruptcy Court's grant of partial summary judgment to the Government.

## IV. CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision is affirmed.

SO ORDERED.

Dated: February 22, 2021  
       Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge